UNITED STATES, Appellant

v

RICHARD L. HUNTSMAN, Private First Class, U. S. Army, Appellee

22 USCMA 100, 46 CMR 100

No. 25,892

January 19, 1973

*Captain William A. Kolibash* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson,* and *Captain Stan L. Spangler.*

*Captain John Howard Shows* argued the cause for Appellee, Accused. With him on the brief were *Colonel Arnold I. Melnick,* and *Captain Michael A. Mason.*

## Opinion of the Court

DUNCAN, Judge:

The Court of Military Review set aside the accused's conviction of wrongful delivery of LSD after determining that trial defense counsel had been unduly restricted by the military judge in his voir dire examination of a court member. By certification, the Judge Advocate General of the Army has asked several questions regarding this action.

With regard to the subject matter of the certification, the record reflects the following:

"Q [DC]. Major Waltman, would you tend to disbelieve or give less weight to a person who has been convicted by court-martial solely because he'd been convicted of a crime?

"MJ: What kind of a crime?

"DC: Any kind of a crime, Your Honor.

"MJ: It wouldn't necessarily be admissible, unless it was a crime involving moral turpitude.

"DC: The area that I was interested in, Your Honor, was if they would solely because of a record of conviction tend to disbelieve a witness, solely for that reason.

"TC: Excuse me, Your Honor, I'd like to object to that question.

"MJ: Objection sustained. Rephrase your question.

"DC: All right, Your Honor. Would you, sir, tend to disbelieve or give less weight to the testimony of a witness who'd been convicted by court-martial for a crime that is considered a felony, solely because he had been convicted? Regardless of other factors.

"TC: Excuse me, Your Honor, I will again object. I believe this is a ground on which you will instruct the court members, to so find.

"MJ: That's correct. That's an improper question, Cpt Ruth.

"DC: I will withdraw that question from you, Major Waltman."

The Court of Military Review held that:

"The result [of the military judge's intervention] was that the trial defense counsel was not allowed to test the court members for possible prejudice in regard to a prior conviction of a felony type offense of a vital defense witness. The purposes of *voir dire* are to lay a foundation for challenges for cause and to enable the defense counsel to wisely employ the peremptory challenge against any member. The questions posed to the court members and the answers from the court members are most helpful to the defense counsel. The military judge should not permit the examination of court members on *voir dire* to range as wide as the fertile imagination of defense counsel. However, when there is a doubt as to the propriety of the question, it might be better to allow it to be answered. United States v Parker, 6 USCMA 274, 19 CMR 400 (1955)."

No challenge for cause or peremptory challenge was exercised by the defense.

*Certified Questions.*

I. "WAS THE QUESTION 'WOULD YOU, SIR, TEND TO DISBELIEVE OR GIVE LESS WEIGHT TO THE TESTIMONY OF A WITNESS WHO'D BEEN CONVICTED BY COURT-MARTIAL FOR A CRIME THAT IS CONSIDERED A FELONY SOLELY BECAUSE HE HAD BEEN CONVICTED? REGARDLESS OF OTHER FACTORS' A PROPER QUESTION FOR VOIR DIRE?

II. "DID THE MILITARY JUDGE ABUSE HIS DISCRETION IN SUSTAINING THE TRIAL COUNSEL'S OBJECTION TO THE DISPUTED QUESTION?

III. "WAS THE ACCUSED PREJUDICED, WITHIN THE MEANING OF ARTICLE 59(a), UNIFORM CODE OF MILITARY JUSTICE, BY THE MILITARY JUDGE'S ACTION IN DISALLOWING THE QUESTION IN DISPUTE?

I and II

The Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 62b, provides that the trial or defense counsel may question the court, or individual members thereof, as well as the military judge, "concerning the existence or nonexistence of facts which may disclose a proper ground of challenge." In United States v Parker, 6 USCMA 274, 279, 280, 282, 19 CMR 400, 405, 406, 408 (1955), this Court, with regard to the cited Manual provision, established the following general rule:

"When a member is examined with a view to challenge, it is to be remembered that he may be asked any pertinent question tending to establish a disqualification for duty on the court. Statutory disqualifications, implied bias, actual bias, or other matters which have some substantial and direct bearing on an accused's right to an impartial court, are all proper subjects of inquiry. The accused should be allowed considerable latitude in examining members so as to be in a position intelligently and wisely to exercise a challenge for cause or a peremptory challenge. Accordingly, when there is a fair doubt as to the propriety of any question, it is better to allow it to be answered.

While materiality and relevancy must always be considered to keep the examination within bounds, they should be interpreted in a light favorable to the accused. If there is doubt in the mind of the law officer as to the propriety and good faith of the questions, he can and should require the examiner to disclose the relevancy of the examination, rather than merely forbid the inquiry.

．　．　．　．　．

". . . [O]ne of the well-recognized rules of criminal jurisprudence is that wide discretion is vested in trial judges as to questions which must be answered by jurors on voir dire. Appellate courts should reverse only when a clear abuse of discretion, prejudicial to a defendant, is shown. . . .

．　．　．　．　．

"Out of the welter of cases dealing with this subject—some of which we have mentioned—comes the general principle that each case must be separately analyzed to determine whether, under the issues, facts, and circumstances involved, the specific rulings were an abuse of discretion."

Accord, United States v Freeman, 15 USCMA 126, 35 CMR 98 (1964); United States v Sutton, 15 USCMA 531, 36 CMR 29 (1965); United States v Fort, 16 USCMA 86, 36 CMR 242 (1966). See generally 47 Am Jur 2d, *Jury* § 195 *et seq.* (1969).

The nature of the question asked in this case is treated extensively in an annotation to Mercer v Commonwealh, 330 SW2d 734, 99 ALR2d 1 (Ky 1959). Section 5 of the annotation, entitled, "*Question concerning weight of testimony if certain witness testifies,*" reveals that "[t]he courts appear to be divided on the issue." 99 ALR2d at 59. The usual reason for holding such questions proper (or no abuse of discretion to allow them) has been that a particular question was designed to serve the legitimate purpose of ascertaining whether a juror, because of a prejudice or predisposition for or against the testimony of certain witnesses, was biased and should therefore be disqualified. " 'Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury.' " Morford v United States, 339 US 258, 259, 94 L Ed 815, 816, 70 S Ct 586 (1950), quoting from Dennis v United States, 339 US 162, 171, 172, 94 L Ed 734, 742, 70 S Ct 519 (1950). An often expressed reason, and the one apparently relied upon in this case, for holding such questions improper (or no abuse of discretion to disallow) is that the question was unnecessary because the trial judge could be expected to give the jurors full instructions as to the relevant factors involved in weighing testimony and the jurors could be expected to follow such instructions.

While the trial court possesses a "broad discretion as to the questions to be asked" during the voir dire, the exercise of that discretion is "subject to the essential demands of fairness." Aldridge v United States, 283 US 308, 310, 75 L Ed 1056, 51 S Ct 470 (1931).

In Harvin v United States, — A2d — (DC Ct App 1972), the court stated:

". . . In fact, the very purpose of the *voir dire* is to permit counsel to satisfy themselves that they have an impartial jury. [Citations omitted.] Nothing could be plainer than that a predisposition to attach greater or lesser credence to any witness' testimony is inconsistent with this fundament of our legal system, and, as *Brown* [Brown v United States, 119 US App DC 203, 338 F2d 543 (1964)] and *Sellers* [Sellers v United States, 106 US App DC 209, 271 F2d 475 (1959)] illustrate, the defendant is entitled to explore this area of possible disqualification prior to the impanelling of the jury."

In the case at bar, defense counsel attempted to ascertain whether the court members would be biased against a convicted felon, who appeared as a witness, solely because of the conviction and regardless of other factors. The Manual, supra, paragraph 153*b*(2)(b), provides that a conviction for an

offense "involving moral turpitude or otherwise affecting credibility" is proper grounds for impeachment of a witness. Among the offenses so categorized are courts-martial convictions "for which a punishment of dishonorable discharge or confinement at hard labor for more than one year is authorized."

The issue before us, as we said in United States v Sutton, supra, at 535, 36 CMR 331, is whether the military judge, by excluding the question, "exercised a sound discretion. And that, in turn, depends upon an analysis of the issues, facts, and circumstances involved in the *voir dire*. United States v Parker, supra."

Huntsman was charged and convicted of one specification of wrongful delivery of LSD. He was prosecuted on the theory that he was an aider and abettor of one Mobley, *the only defense witness.*[1] Mobley had previously been convicted of an absence without leave for which he could have been sentenced to a dishonorable discharge, confinement at hard labor for one year, and accessory penalties. The Government's case, of which the defense was undoubtedly aware prior to trial, consisted primarily of the testimony of two undercover investigators who were assigned to the Military Police Battalion. A third military policeman who established the chain of custody of the evidence and a chemist from the Army Crime Laboratory at Fort Gordon were the only other witnesses. As the military judge stated during an out-of-court hearing on instructions, "It's strictly a question of who the court wants to believe, it would appear to me."

Under the circumstances of this case, we believe that defense counsel should have been permitted to inquire into the potential for bias which Mobley's conviction for absence without leave, a uniquely military offense, might have had on the members of the court. It may have had none. The military judge, however, by sum-

marily curtailing the inquiry and thereby preventing counsel from exploring this area cannot be said to have "exercised a sound discretion." United States v Sutton, supra, at 535, 36 CMR at 331. As we said in *Parker:* "The accused should be allowed considerable latitude in examining members so as to be in a position intelligently and wisely to exercise a challenge for cause or a peremptory challenge." 6 USCMA at 279, 19 CMR at 405. Challenges for cause include "[a]ny other facts indicating that he should not sit as a member . . . in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality." Manual, supra, paragraph 62f. The Supreme Court has noted that the peremptory challenge

". . . is 'one of the most important of the rights secured to the accused,' Pointer v United States, 151 US 396, 408, 38 L Ed 208, 214, 14 S Ct 410 [1894]. The denial or impairment of the right is reversible error without a showing of prejudice. Lewis v United States, 146 US 370, 36 L Ed 1011, 13 S Ct 136 [1892]; Harrison v United States, 163 US 140, 41 L Ed 104, 16 S Ct 961 [1896]; cf. Gulf, Colorado & Santa Fe R. Co. v Shane, 157 US 348, 39 L Ed 727, 15 S Ct 641 [1895]. 'For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' Lewis v United States, 146 US 370, 378, 36 L Ed 1011, 1014, 13 S Ct 136 [1892]." [Swain v Alabama, 380 US 202, 219, 13 L Ed 2d 759, 772, 85 S Ct 824 (1965).]

See also United States v Dellinger, — F2d —, 12 Crim L Rep 2193 (7th Cir 1972).

We are aware that in United States v Carver, 6 USCMA 258, 266, 19 CMR 384, 392 (1955), this Court stated: "A party has no right to ascertain in advance what the jury may think of a

---

[1] Mobley testified that he alone was responsible for the offense and that the appellant took no part in the transaction.

proposed witness' credibility." That statement, however, must be read in the context of the situation prevailing in the case then before us. As an immutable principle of law it is too broad for, as noted above, the courts are divided on whether questions may be asked on voir dire concerning the weight of testimony if certain witnesses testify.

The first and second certified questions are answered in the affirmative.

### III

We do not believe, however, that the appellant was prejudiced by the military judge's action in disallowing the question.

The record reflects that on cross-examination trial counsel elicited from Mobley the fact that he had been "in trouble previously" for an absence without leave of "286 days." The military judge interrupted at this point:

"MJ: Excuse me just a minute. The court's instructed to disregard the last answer. Again, I caution counsel. Better learn the rules of evidence on testing your witness's credibility or impeaching the witness.

"TC: Your Honor, as I understand the law, I do have—am well within my bounds in impeaching a witness with evidence of a prior conviction.

"MJ: If it involves moral turpitude or a felony offense, and since when is an AWOL such an offense, regardless of the length of time?

"TC: Your Honor, the maximum punishment for AWOL, certain offenses, does allow confinement of more than a year.

"MJ: That's not the criteria. An AWOL is definitely not an offense involving moral turpitude or a felony offense.

"TC: Very well, Your Honor."

It is clear that in light of the above-cited Manual provision the military judge erred in believing that an absence without leave for a length of time for which a punishment of dishonorable discharge could be assessed was not proper grounds for impeachment of a witness. However, the witness was not impeached because the court was instructed to disregard the testimony, and the appellant suffered no prejudice.

The third certified question is answered in the negative.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for resubmission to the Court of Military Review for action not inconsistent with this opinion.

Chief Judge DARDEN and Judge QUINN concur.