Allen R. TAYLOR, Appellant,

v.

UNITED STATES, Appellee.

No. 10836.

District of Columbia Court of Appeals.

Argued Jan. 11, 1977.

Decided April 29, 1977.

Steffen W. Graae, Washington, D.C., appointed by this court, for appellant.

Gerard F. Treanor, Jr., Asst. U. S. Atty., Washington, D.C., with whom Earl J. Sil-

3. Robinson made no allegation of liability on the part of the City because of negligence.

bert, U. S. Atty., John A. Terry, William D. Pease, and Harry R. Benner, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

KELLY, Associate Judge:

In this appeal from convictions of felony murder,[1] second-degree burglary,[2] and attempted robbery while armed,[3] we are asked to decide whether the trial court erred in refusing to seat in the jury box the first twelve jurors who had passed challenge for cause, allegedly depriving appellant of the opportunity to visually inspect the jurors before exercising his peremptory strikes and impairing his unrestricted right to a meaningful exercise of those challenges.

When the prospective jurors were sworn, the trial judge directed each member of the panel to stand briefly as his or her name was called "so that counsel and the Court may associate your name and face." Appellant and his attorney were invited to turn their chairs, if they wished, to facilitate a viewing of the panel. After the roll had been called, appellant, both counsel, and the prospective witnesses were introduced to the jurors. The court conducted the voir dire examination and several prospective jurors were excused for cause.[4] Counsel then came to the bench, as required by Super.Ct.Cr.R. 24(b), where the following ensued:[5]

> THE COURT: All right. I would ask counsel then, to proceed with their pre-emptory [sic] challenges.
>
> [THE PROSECUTOR]: Number one, list one.
>
> [DEFENSE COUNSEL]: I guess I am confused about the procedure. You are not going to seat twelve and then strike them?
>
> THE COURT: No. You may assume that the first twelve persons will be in the box.

[Each counsel then struck five members of the jury panel.]

> THE COURT: If you wish to have any person stand to be reviewed, I will—
>
> [DEFENSE COUNSEL]: Your Honor, I am somewhat surprised and disturbed by this procedure, because I had assured my client that he would have an opportunity to view the people who would be seated, so that—
>
> THE COURT: That is why I asked him to turn his chair around, so he could look at them.

[T]he Court will call the roll as usual, give you an opportunity to view the jurors. The last question that we put will be one which brings the jurors to the bench. At the conclusion of those responses at the bench, I will ask counsel to exercise their challenges for cause. We will, then, proceed to exercise the pre-emptory [sic] challenges here: first [the prosecutor], then yourself. Any time a challenge is not exercised it will count as one of your challenges. Any other system would, of course, mean that one side or the other has reserved all of its challenges, but the other party has exercised its challenges and, thereby, change the entire panel.

The Court will be calling the list as usual, from the top. You may strike anywhere on the lists. They have not yet arrived in the courtroom, but if we have copies of the jury list, which contains information you may pass those to counsel at this time. [Tr. Vol. I at 10.]

---

1. D.C. Code 1973, § 22–2401.

2. D.C. Code 1973, § 22–1801(b).

3. D.C. Code 1973, §§ 22–2902, –3202.

4. The voir dire procedure accorded with the provisions of Super.Ct.Cr.R. 24(a):

    EXAMINATION. The court may permit the defendant or his attorney and the prosecutor to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the prosecutor to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

    Appellant disagrees with the practice of a judge-conducted voir dire but does not directly challenge it here.

5. The trial judge had previously instructed counsel that:

[DEFENSE COUNSEL]: I assumed that we would place twelve in the box and strike them out as we saw them.

THE COURT: Is there any one you wish to have stand?

[DEFENSE COUNSEL]: Well, may I consult with my client?

THE COURT: You may.

[Pause.]

[DEFENSE COUNSEL]: Your Honor, it is extremely difficult for my client to recall who is who, and to associate the names with a face. I have had five strikes thus far; is that correct, Your Honor?

[Whereupon the process of striking prospective jurors continued].

Defense counsel formally objected to the jury selection process after the jury and two alternates had been seated and sworn.[6]

It was held in *Amsler v. United States*, 381 F.2d 37, 44 (9th Cir. 1967), that a similar method of jury selection was eminently fair to both sides, the court stating:

Defense counsel argued that twelve jurors should have been seated in the jury box and challenges exercised alternately against the panel with replacements when any one was excused until twelve jurors were seated who had passed all challenges. The manner of qualifying a jury is largely discretionary with the trial judge. No specific method is prescribed. As the judge said: "\* \* \* so at all times counsel knows who their ultimate jury is going to be, and it is not exercising a challenge and not knowing who you might draw subsequently." We think the "Arizona System" as used in selecting the jury was eminently fair to both sides and the trial judge did not err in this respect. A similar system of qualifying a jury was approved in *Pointer v. United States*, 151 · U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208.

And the court in *United States v. Williams*, 447 F.2d 894 (5th Cir. 1971), also sustained a requirement that peremptory challenges be made from the entire jury panel. We also conclude that the method of jury selection in this case was one fair to both sides. The trial judge provided appellant with ample opportunity to inspect the panel before exercising his strikes by asking the prospective jurors to stand as their names were called, by giving the appellant and defense counsel the opportunity to turn their chairs to better view the panel, and by offering to have any panel member stand again to aid the defense in connecting faces with names.

*Affirmed.*

6. I just want to register an objection to the manner in which the jury was selected. I feel that given that no jurors were seated in the box as twelve, my client, Mr. Taylor, had no opportunity, really, to get himself into the selection process. Of course, he does have a right to assist counsel in selecting the jury. It's the jury that is going to render a verdict on his case and it was important for him to associate faces with names, since that is all that he had to work with, and there was no one to look at in the jury box. I just want to put that objection on the record, Your Honor. (Tr. I at 46).